## DECLARATION OF KIM MCGILL

**Re: CDCR Implementation of NDPF (Non-Designated Programming Facilities)**

I am writing this declaration in support of Joel Reyes' motion for a temporary restraining order and preliminary injunction.

I first heard about the merging of sensitive needs yards and general population within the California Department of Corrections and Rehabilitation (CDCR) in the fall 2018, when a family member – whose husband is incarcerated – asked for the Youth Justice Coalition's help to support families who were worried about the policy. Since then, we have met weekly – both on phone calls and in person - to help families develop and lead a response.

**The implementation by California Department of Corrections and Rehabilitation of "Non-Designated Programming Facility" (NDPF) Yards**

Begun in the spring of 2018, this program merges SNY (Sensitive Needs Yards) and GP (General Population) into the same housing units, programming and yards. The program forces people to integrate who have been separated, for as long as twenty years, for safety reasons.

CDCR determined that people placed on Sensitive Needs Yards cannot program on a General Population yard safely due to a number of issues, including those who:

1. Are convicted of sexual assault;
2. Have informed on other people in the system;
3. Are former law enforcement;
4. Are gang "dropouts" – having left a gang and needing protection from retaliation; and
5. Are gay, transgender and gender nonconforming people

These yards were formerly known as "protective custody."

In addition, this included the removal of people from general population who were forced by CDCR to "debrief" – including often naming those involved in prison politics – in order to get out of solitary confinement (SHU). SHU confinements were often long-term, inhumane and debilitating, and many studies have determined that such confessions are not reliable. Furthermore, one person's release from solitary

-1-

confinement was at the expense of another person's confinement in the SHU, loss of good time credits and/or postponed eligibility for parole.

As the population in sensitive needs yards grew to nearly one-third the state's prison population, they began to replicate many of the problems in general population – including overcrowding, lack of adequate services, education and rehabilitative programming, medical epidemics and violence. The magnitude became unmanageable, and as conditions deteriorated, the prevalence of violence on many of these yards grew significantly.

In addition, over the past decade, people trapped in solitary confinement organized for changes in policy – including mobilizing several statewide hunger strikes and law suits – that brought international attention to the inhumane conditions and treatment in solitary confinement. This forced CDCR to address the arbitrary and long use of solitary confinement, and the dangerous requirement that people debrief – give names and information to CDCR about who was allegedly involved in "prison gang" activity – in order to earn release from the SHU. As described above, this policy also increased the potential for retaliatory violence within the system and contributed greatly to the dramatic growth in the SNY population.

In response to growing challenges on the sensitive needs yards, pressures to address misuse of the SHU, and litigation requiring programming for all yards in order to ensure equal access to education, vocations and rehabilitation, CDCR was forced to consider reintegration. But, rather than involving incarcerated people, their families and community volunteers working inside institutions in the development of a plan to reintegrate people safely, CDCR began, in the spring of 2018, to force the immediate reintegration of the yards. CDCR decided to first integrate the two groups across level 1-2 facilities, arguing that this would give equal opportunity for access to programs including education and self-help.

Originally, implementation was on a voluntary basis as in RJ Donovan and San Quentin. However, this has since been changed to forced integration, resulting in increased assaults, riots, stabbings and beatings.

In addition, CDCR staff also threatened people afraid to integrate with disciplinary write-ups, elimination of good time credits / added time, and reports to the Board of Prison Terms to impact parole dates. Even people who had served decades in prison and were months short of coming home, were suddenly facing additional time.

There are also unethical tactics being utilized at multiple facilities. CDCR staff is interviewing people, referring to it as a "survey" of opinions. But, the consequences to this "survey" are extreme. People are questioned about willingness to program on an NDPF yard. If they say "no" or "no comment," people have

reported that they are threatened with a serious 115 (disciplinary write-up), possible transfer to a higher-level yard or facility, or transfer out-of-state. Many are being sent to an "emergency committee," and they are currently in the process of being transferred. Of course, people say they are declining to agree to a change in housing due to the hazards it poses to their safety and well-being, as well as the potential for conflicts that can lead to discipline, SHU confinement, increase in levels, or even the filing of new charges – all of which can negatively impact access to programming, review at parole hearings, eliminate chances for commutation or court release, and/or reduce good-time credits - all of which mean time added to sentences. Many people have worked hard to earn their way down from a level 3 or 4 yard to a level 1 or 2 over many years through participation in work, self-help, education and other positive programming.

For all of these reasons, the forced and immediate integration of the yards:

6. Is increasing incidents of violence and conflict;
7. Jeopardizes the milestones and growth people have worked so diligently to obtain;
8. Will lead to longer sentences and increased incarceration costs, thus contributing to overcrowding that a federal law suit, AB 109 realignment and other changes in law and policies were intended to address; and
9. Undermines efforts made through changes in state law to reduce overcrowding, increase fairness in sentencing, and reduce violence through greater access to rehabilitative programming and increased hope for release – including the legislature's passing of SB 9, SB 260, SB 261 and AB 1308, as well as the public's voting for ballot initiatives such as Propositions 47 and 57.

Families are also suffering greatly due to this program. With the loss of privileges and/or increased administrative segregation, family connection – the factor that contributes most to positive interactions inside facilities and lower recidivism when people come home – has been broken. Yards are increasingly on lockdown, eliminating phone calls, access to regular mail, visiting or family visiting. Families are also experiencing severe mental/emotional anguish, anxiety and fear without knowing if their loved ones are safe or if their opportunities to come home have been jeopardized.

Families across the state and members of the Youth Justice Coalition have met weekly to fight back. We have rallied outside CDCR and several institutions across the state. We met twice with Acting CDCR Secretary Ralph Diaz and the command staff at the agency. We have met with the offices of several state legislators on four occasions – each time making the long trip from Los Angeles to Sacramento, including four days – November 2nd, December 14th, January 18th and February 15th – when we also mobilized large

numbers of family members to go to the Capitol and present their experiences and solutions. We sent an organizational sign-on letter to CDCR along with more than 6,000 signatures on two separate petitions, (including over 2,000 signatures collected by families of people inside, and nearly 10,000 signatures so far collected on our petition to both families and the larger community).

***Our demands are simple and reasonable. We have urged Ralph Diaz and CDCR to:***

1. Immediately end the integration of Sensitive Needs Yards into the General Population - (e.g. families are concerned that people in general population are being integrated with people from Sensitive Needs Yards in smaller numbers, including Norco where people have reported having 5 general population individuals with 25 SNY individuals);
2. Make NDPF voluntary just like the program began in the first two prisons, if CDCR would like to continue the program;
3. Meet with families and people inside through the established advisory councils and self-help groups in order to solicit ideas for full programming, access to medical and other resources, and possible plan for any future integration of people incarcerated within CDCR facilities;
4. Meet with advocacy and organizing groups – many of which are led by formerly incarcerated people and/or the families of incarcerated people, and others that work regularly inside the institutions – to further advise CDCR on these matters;
5. Meet with union membership to gather correctional officers' advice on these matters;
6. Develop a work group including representatives from people inside, formerly incarcerated people, family members and community organizations and task the work group to release a report on the best way forward to ensure programming, medical and mental health care, treatment, rehabilitation, safety and an environment free from racial and geographic hostilities, politics, violence and coercion for everyone in CDCR custody.

At our meeting with Secretary Diaz in November, we won a short, week-long "hiatus" on integration of the merging of yards system-wide. But since then, families, people inside and CDCR staff are once again reporting on forced merging, threats of discipline and report for the Board of Prison Terms (parole hearings), and acts of violence when populations are merged.

Therefore, I am writing this declaration in support of Joel Reyes' motion for a temporary restraining order and preliminary injunction.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on February 4th, 2019 in Los Angeles, California.

1
2
3
4   _____
5   Kim McGill, Organizer
6   Youth Justice Coalition
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28