UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHAD KESTER,

　　　　　　　Plaintiff,

　　　v.

RALPH DIAZ, et al.,

　　　　　　　Defendants.

Case No. 19-cv-04205-JST

**ORDER OF SERVICE; GRANTING EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER; SETTING BRIEFING SCHEDULE AND HEARING ON PRELIMINARY INJUNCTION MOTION**

Re: ECF No. 2

## I.   INTRODUCTION

　　　　Plaintiff, an inmate at Salinas Valley State Prison ("SVSP"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  He also brings a motion for temporary restraining order ("TRO") and for preliminary injunction.  ECF No. 2.  Plaintiff has been granted leave to proceed *in forma pauperis* in a separate order.  His complaint (ECF No. 1) is now before the Court for review under 28 U.S.C. § 1915A.  For the reasons set forth below, the Court will grant in part and deny in part the motion for TRO, issue an order to show cause regarding the preliminary injunction, and find that Plaintiff's complaint states a cognizable claim for failure to protect under the Eighth Amendment.

## II.   DISCUSSION

### A.   Complaint

#### 1.   Standard of Review

　　　　A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity, or from an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  In its review, the Court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be

1   granted, or seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C.

2   § 1915A(b) (1), (2).  *Pro se* pleadings must be liberally construed.  *Balistreri v. Pacifica Police*

3   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

4        Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

5   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Specific facts are not

6   necessary; the statement need only 'give the defendant fair notice of what the . . . . claim is and the

7   grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

8   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

9   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

10   do. . . . Factual allegations must be enough to raise a right to relief above the speculative level."

11   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  A complaint must

12   proffer "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

13        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a

14   right secured by the Constitution or laws of the United States was violated; and (2) that the

15   violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S.

16   42, 48 (1988).

17        **2.    Legal Claims**

18        Before screening the complaint, the Court notes that the complaint in this action is almost

19   identical to the complaint filed in *Ruiz v. Diaz*, Case No. 19-cv-01928 LHK (PR), with the same

20   statement of claim and the same defendants.[1]  The related request for a preliminary

21   injunction/temporary restraining order is also similar, with an identical[2] supporting declaration

22   from Kim McGill, an organizer with the Youth Justice Coalition.[3]

23   _____

24   [1] In *Ruiz*, the court has related over twenty-two complaints because the complaints are nearly
     identical.  *See Ruiz*, ECF Nos. 31, 35.

25   [2] Ms. McGill's declaration states, "I am writing this declaration in support of Joel Reyes' motion
     for a temporary restraining order and preliminary injunction."  ECF No. 4 at 1.  Plaintiff's name is
26   not Joel Reyes.

27   [3] It appears that Plaintiff's papers may have been drafted by an undisclosed paralegal or attorney.
     The courts frown upon ghostwriting.  *See Walker v. Pac. Mar. Assoc.*, No. C07-3100 BZ, 2008
     WL 1734757, at *2 (N.D. Cal. Apr. 14, 2008) (warning that ghostwriting could lead to sanctions
28   being imposed); *see also Makreas v. Moore Law Grp., A.P.C.*, No. C-11-2406 MMC, 2012 WL
     1458191, at *3 (N.D. Cal. Apr. 26, 2012) ("ghostwriting is not permitted in the federal courts").

United States District Court
Northern District of California

1    The complaint names as defendants California Department of Corrections and

2    Rehabilitation ("CDCR") Secretary Ralph Diaz,[4] CDCR Acting Undersecretary Kathleen Allison,

3    and Acting SVSP Warden Tammy Foss.  On December 12, 2017, Defendant Allison announced

4    that an expansion of the program whereby inmates housed in Sensitive Needs Yards ("SNY

5    inmates") would be housed with General Population inmates ("GP inmates") in all Level 1 and

6    Level 2 yards.  On September 10, 2018, Defendant Diaz issued a memorandum setting forth the

7    schedule for such mergers, and scheduling the SVSP merger for December 2018.  As a result of

8    the merger, there was a major riot that resulted in multiple injuries.  ECF No. 1 ("Compl.") at 3.

9    According to the complaint, it has long been understood that SNY inmates cannot safely

10   merge with GP inmates.  The complaint alleges that it is well documented that when SNY inmates

11   and GP inmates have previously merged, there have been incidents of violence.  SNY inmates

12   either preemptively attacked GP inmates because they feared for their lives, or SNY inmates were

13   attacked by GP inmates.  Compl. at 3.

14   Plaintiff also references the incremental releases of members of the Fresno Bulldogs prison

15   gang, Compl. at 3, but does not explain how the Fresno Bulldogs are related to the merger or pose

16   a specific danger to Plaintiff.  This seemingly unrelated reference to the Fresno Bulldogs may be

17   due to the use of a boilerplate complaint submitted on behalf of multiple inmates.  *See* note 2,

18   *supra*.

19   It is unclear where Plaintiff is currently housed or where he was housed at the time he filed

20

_____

21   There are at least two problems with the submission of ghostwritten pleadings and memoranda.

22   First, because a generic boilerplate complaint is intended to describe the circumstances of an entire group of plaintiffs, it will often fail to accurately or completely describe an individual plaintiff's

23   circumstances.  One prisoner-plaintiff might have a stronger case than other prisoner-plaintiffs based on his or her individual circumstances, but those circumstances will not be clear to a court if

24   the complaint uses boilerplate language.  Second, regardless of whether the language is boilerplate, the use of a third party to draft documents, particularly when that third party is a

25   lawyer, "affords [the prisoner-plaintiff] the benefit of this court's liberal construction of pro se pleadings, but . . . inappropriately shields [the third party] from responsibility and accountability

26   for his actions and counsel."  *Duran v. Carris*, 238 F.3d 1268, 1271-72 (10th Cir. 2001) (citations omitted).

27   [4] Defendant Diaz is no longer the acting CDCR Secretary.  In March 2019, Defendant Diaz was appointed CDCR Secretary.  *See* California Department of Corrections and Rehabilitation,

28   *Secretary Ralph Diaz – California Department of Corrections and Rehabilitation*, http://cdcr.ca.gov/about-cdcr/secretary (last visited Aug. 15, 2019).

United States District Court
Northern District of California

3

1   the complaint.  According to the grievance attached to the complaint, as of February 28, 2019,

2   Plaintiff was housed at SVSP Level-III SNY facility with a Level-II Placement Score of 34, and

3   had been endorsed to California Institution for Men ("CIM") Level II-Sensitive Needs Yard.

4   However, since his endorsement, CIM Level I and Level II yards converted to Non-Designated

5   Programming Facilities ("NDPF"), which means that Level I and Level II GP and SNY inmates

6   are housed together.  Plaintiff has remained housed at SVSP pending the transfer to CIM, but it is

7   unclear if he remains in the SVSP Level-III SNY facility or has transferred to an SVSP Level-II

8   facility that is an NDPF.

9        Plaintiff alleges that the "planned merge[r] would place [him] at serious risk of harm or

10   injury and in violation of his right to be protected from violence," and that Defendants "are well

11   aware of and are completely disregarding such [] excessive risk to [his] health and safety."

12   Compl. at 3.  The Eighth Amendment requires that prison officials take reasonable measures to

13   guarantee the safety of prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In particular,

14   prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Id.*

15   at 833.  The failure of prison officials to protect inmates from attacks by other inmates or from

16   dangerous conditions at the prison violates the Eighth Amendment when two requirements are

17   met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is,

18   subjectively, deliberately indifferent to inmate health or safety.  *Id*. at 834.  A prison official is

19   deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety

20   by failing to take reasonable steps to abate it.  *Id.* at 837.  Liberally construed, Plaintiff's

21   allegations state a cognizable Eighth Amendment claim for failure to protect.

22        **B.     Motion for Temporary Restraining Order/Preliminary Injunction**

23        Plaintiff has filed an *ex parte* emergency motion requesting that the Court enjoin

24   Defendants and all persons acting on their behalf from placing Plaintiff on an NDPF yard.  ECF

25   No. 2 at 2.  Plaintiff also requests that Defendants be enjoined from merging SNY and GP

26   prisoners, pending entry by the Court of a final judgment in this action.  *Id.* at 3.

27        **1.     Background**

28        According to the exhibits attached to the complaint, as of November 2018, Plaintiff was

4

United States District Court
Northern District of California

housed on an NDPF yard.  Compl. at 6.  Sometime between November 2018 and February 2019, Plaintiff was housed at SVSP's Level-III SNY facility with a Level-II Placement Score of 34. Compl. at 4.  Plaintiff was endorsed to CIM Level-II SNY at his prior annual review but remained housed at SVSP pending the transfer.  Compl. at 4.  Since the endorsement, CIM Level-II SNY converted to an NDPF.  Compl. at 4.  In November 2018, Plaintiff filed a grievance requesting a transfer to an SNY facility instead of CIM, claiming that he faced a credible threat to his safety. Compl. at 6.  On February 28, 2018, the grievance was denied at the third and final level on the grounds that Plaintiff has failed to provide any evidence to support that placement in an NDPF presented any greater, or more specific, risk to his safety beyond that inherent in the correctional environment.  Compl. at 5.

In a declaration dated July 11, 2019, made under penalty of perjury pursuant to 28 U.S.C. § 1746, Plaintiff stated that he feared for his life if he were to be placed in an NDPF yard because he is a convicted sex offender and a drop-out gang member; he has helped law enforcement obtain convictions for at least two GP inmates; and two separate GP gangs have offered a bounty for his death.  ECF No. 3 at 3.  Plaintiff has already been the victim of two violent attacks.  Plaintiff states that he suffers from mental illness, has been diagnosed as bipolar and "schizo-affective," has mobility issues requiring him to use a cane for walking, and has substance abuse issues.  ECF No. 3 at 1.  Plaintiff's declaration requests that the Court enter an order making it impossible for him to be exposed to GP inmates.  ECF No. 3 at 2.

Plaintiff does not specify where he is currently housed, but based on his July 11, 2019 declaration, the Court presumes that Plaintiff remains in SNY housing and is not currently housed on an NDPF yard.

## 2.   Standard

The Prisoner Litigation Reform Act of 1995 ("PLRA") restricts the power of the court to grant prospective relief in any action involving prison conditions.  *See* 18 U.S.C. § 3626(a). Section 3626(a)(2) permits the court to enter a temporary restraining order or preliminary injunction "to the extent otherwise authorized by law" but requires that such an order "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary

United States District Court
Northern District of California

relief, and be the least intrusive means necessary to correct that harm." *See* 18 U.S.C.

§ 3626(a)(2). The court must give "substantial weight to any adverse impact on public safety or

the operation of a criminal justice system caused by the preliminary relief." *Id.*

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat.*

*Res. Def. Council*, 555 U.S. 7, 20 (2008) (noting that such remedies are extraordinary, and not

granted as of right). The party seeking the injunction bears the burden of proving these

elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "The Ninth Circuit

weighs these factors on a sliding scale, such that where there are only 'serious questions going to

the merits'—that is, less than a 'likelihood of success on the merits'—a preliminary injunction

may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the

other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Shell*

*Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (emphasis in original)).

Even where the balance tips sharply in the plaintiff's favor, however, the plaintiff must still make

the threshold showing of likely success on the merits or a serious legal question. *See Leyva-Perez*

*v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) ("[E]ven certainty of irreparable harm has

never *entitled* one to a stay.") (emphasis in original). In addition, the issuance of a preliminary

injunction is at the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632

F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order and a

preliminary injunction are "substantially identical." *Stuhlbarg Intern. Sales Co., Inc. v. John D.*

*Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

      **3.**      **Analysis**

            **a)**      **Request to Enjoin Defendants from Placing Plaintiff on NDPF Yard**

With respect to Plaintiff's request for a TRO enjoining Defendants from placing Plaintiff

on an NDPF yard or otherwise requiring him to be housed with GP inmates, the Court finds that

Plaintiff has demonstrated there is a likelihood of success on the merits, that the balance of

1    hardships tips sharply in his favor, that he is likely to suffer irreparable harm, and that an

2    injunction is in the public interest.

3            The Court first finds that there is a likelihood of success on the merits.  The Court notes

4    that the Ninth Circuit has previously granted judgment in favor of a pretrial detainee on a due

5    process failure-to-protect claim[5] where the plaintiff-detainee was raped after being placed in a

6    housing situation that exposed him to harm.  *Redman v. Cty. of San Diego*, 942 F.2d 1435 (9th Cir.

7    1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).  In *Redman*, the

8    plaintiff-inmate was an 18-year-old pretrial detainee standing 5'6" tall and weighing

9    approximately 130 pounds, who had no prior criminal convictions.  He was originally placed in

10   the jail's "young and tender" unit.  After a week, however, he was transferred to the jail's general

11   population and assigned to a single cell with an inmate incarcerated for violation of parole upon a

12   conviction of sex offense.  That inmate had been labelled an "aggressive homosexual"[6] on his

13   inmate status report, and had been transferred from the homosexual housing to the general

14   population because of reported incidents of coercing and manipulating the homosexual inmates for

15   sexual favors.  The Ninth Circuit reversed in part the district court's directed verdict in favor of the

16   defendants, finding that the evidence presented would permit a reasonable jury to conclude that

17   San Diego County and two of the individually named defendants were deliberately indifferent to

18   Redman's constitutional right to personal security.  The court reasoned that although defendants

19   conceded that the desirable course of action was to isolate inmates labeled as "aggressive

20   homosexuals" or place them in smaller units for observation, San Diego County had an unwritten

21   policy of transferring aggressive homosexuals from the homosexual module to the general

22   population to protect inmates labeled as "passive homosexuals" because it was assumed that

23   heterosexual inmates could protect themselves; and because San Diego County correctional

24

25   [5] Deliberate indifference to inmate safety claims brought by pretrial detainees arise under the
     Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's Cruel and
26   Unusual Punishment Clause.  *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir.
     2016).
27   [6] Terms such as "aggressive homosexual" are inherently problematic because they rely on and
     perpetuate unfounded stereotypes concerning LGBTQ individuals.  The Court reluctantly uses
28   such terms to accurately reflect the labelling and categories used at San Diego County's South Bay
     Detention Facility, where the relevant events took place in *Redman*.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   facilities were so overcrowded that there was both a supervision and safety problem.[7]

2       Plaintiff has also demonstrated that he may suffer irreparable harm if placed in an NDPF

3   yard. Plaintiff is currently endorsed for SNY housing, indicating that there is reason for him to be

4   placed in protective custody. Plaintiff has assisted in the conviction of two current GP inmates.

5   *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (recognizing that being

6   known as an informer can expose inmate to violence from other inmates). Plaintiff is a convicted

7   sex offender. State regulations require that inmates who are held pending civil process under the

8   sexually violent predator act shall be held in separate and secure housing, Cal. Penal Code §

9   4002(b), indicating that Plaintiff's status as a sex offender may expose him to violence if housed

10  in the general population. Finally, two GP gangs have offered a bounty for Plaintiff's death.[8]

11      Given that Plaintiff may suffer a severe assault or death if placed on an NDPF yard and

12  that he is currently housed in an SNY yard, the balance of equities tips in his favor. The TRO

13  would simply maintain the status quo and reduce the risk to Plaintiff's safety. *Cf. Univ. of Texas*

14  *v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to

15  preserve the relative positions of the parties until a trial on the merits can be held.").

16      Finally, an injunction would be in the public interest. The public has an interest in

17  protecting inmates' Eighth Amendment right to be free from deliberate indifference to their safety.

18  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."

19  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

20      The Court notes that Plaintiff did not give notice before bringing his motion for TRO. A

21  court may grant a temporary restraining order *ex parte* for "good cause shown," N.D. Cal. Civ. L.

22  R. 65-1(b) and under the following circumstances:

23

24  [7] Although *Redman* is a Fourteenth Amendment failure-to-protect claim, it is still relevant to the instant action because Plaintiff alleges the subjective awareness required to prevail on an Eighth Amendment failure-to-protect claim. To prevail on an Eighth Amendment failure-to-protect

25  claim, a prisoner must prove an individual defendant's subjective awareness of a risk of harm, whereas a pretrial detainee need not do the same in order to prevail on a Fourteenth Amendment

26  failure-to-protect claim. *See Castro*, 833 F.3d at 1068-70 (holding that objective standard of

27  *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), applicable to excessive force claims brought by pretrial detainees, also applies to failure-to-protect claims brought by pretrial detainees).

28  [8] Plaintiff has recently been assaulted twice, but it is unclear if these assaults were motivated by Plaintiff being a dropout gang member, convicted sex offender, and informant.

1

2    The court may issue a temporary restraining order without written or
     oral notice to the adverse party or its attorney only if:

3    (A) specific facts in an affidavit or a verified complaint clearly show
     that immediate and irreparable injury, loss, or damage will result to
4    the movant before the adverse party can be heard in opposition; and

5    (B) the movant's attorney certifies in writing any efforts made to give
     notice and the reasons why it should not be required.

6    Fed. R. Civ. P. 65(b)(1).

7           As discussed *supra*, Plaintiff's declaration sets forth specific facts indicating that he will

8    suffer irreparable harm.  The harm could happen immediately upon his placement on an NDPF

9    yard.  Plaintiff does not have the resources to effect service on his own and must rely on the

10   United States Marshal for that purpose.  It is therefore unclear how long Plaintiff would be

11   exposed to potential harm before adequate notice and a hearing could be provided.  Requiring

12   Plaintiff, an inmate-plaintiff proceeding *pro se*, to wait until Defendants are served and appear in

13   this action before filing a request for a temporary restraining order exposes Plaintiff to a credible

14   risk of assault or death, according to the facts set forth in his declaration.

15          The Court therefore GRANTS Plaintiff's *ex parte* motion for a TRO enjoining Defendants

16   from placing him on a NDPF yard.  ECF No. 2.  Pursuant to Rule 65(d) of the Federal Rules of

17   Civil Procedure, the Court hereby ORDERS that Defendants are enjoined from placing Plaintiff

18   on an NDPF yard or otherwise requiring him to be housed with GP inmates.

19          **b)        Request to Enjoin the Merger of the GP and SNY populations**

20          Plaintiff has also requested that the Court enjoin the merger of the GP and SNY

21   populations.  As discussed *supra*, the PLRA requires that a temporary restraining order "be

22   narrowly drawn, extend no further than necessary to correct the harm the court finds requires

23   preliminary relief, and be the least intrusive means necessary to correct that harm."  *See* 18 U.S.C.

24   § 3626(a)(2).

25          As applied here, because the Court can address the harm to Plaintiff by enjoining the

26   CDCR from housing him with GP inmates, an order that affected other inmates would "extend

27   further than necessary" and would not be "the least intrusive means necessary to correct that

28   harm."  Moreover, given that numerous similar cases are now pending before Judge Lucy Koh,

United States District Court
Northern District of California

9

1  sound principles of case management – including the need to avoid conflicting rulings or the

2  unnecessary duplication of judicial effort – counsel in favor of letting her resolve any issues that

3  go beyond Plaintiff Kester's individual case.  Finally, Plaintiff's requested state-wide relief

4  extends to facilities and yards as to which he has no first-hand knowledge.

5      Accordingly, Plaintiff's request for a TRO enjoining the merger of the GP and SNY

6  populations is DENIED.

7                                      **CONCLUSION**

8      For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

9  Plaintiff's motion for a temporary restraining order.  The Court hereby ENJOINS Defendants and

10  their officers, agents, servants, employees, and attorneys, and any other person or entity subject to

11  their control or acting directly or indirectly in concert or participation with Defendants from

12  placing Plaintiff on an NDPF yard or otherwise requiring him to be housed with GP inmates.  This

13  Temporary Restraining Order shall take effect immediately and shall remain in effect until

14  September 19, 2018 or further order of this Court.  Plaintiff's request for a TRO enjoining the

15  merger of the GP and SNY populations is DENIED.

16              **ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

17      Defendants, and each of them, is hereby ORDERED TO SHOW CAUSE on September

18  18, 2019, at 9:30 a.m., or as soon thereafter as counsel may be heard in the courtroom of the

19  Honorable Jon S. Tigar, located at 1301 Clay Street, Oakland, California, why they, and each of

20  them, and their officers, agents, servants, employees, and attorneys, and any other person or entity

21  subject to their control or acting directly or indirectly in concert or participation with Defendants,

22  should not be enjoined from taking any action placing Plaintiff on an NDPF yard or otherwise

23  requiring him to be housed with GP inmates.  Defendants are also ordered to show cause why such

24  relief would not be narrowly drawn, extend no further than necessary to correct the violation of the

25  Federal right, and be the least intrusive means necessary to correct the violation of a Federal right,

26  *see* 18 U.S.C.A. § 3626(a)(1), such that final injunctive relief may be entered at that time, *id.*

27  Defendants shall file with the Court and serve on Plaintiff an opposition to the preliminary

28  injunction motion by September 9, 2019.  In light of the time constraints imposed by Rule 65 and

United States District Court
Northern District of California

10

the difficulties Plaintiff will face in filing a reply, the Court will not provide for a written reply but will allow Plaintiff to respond at the hearing.

Plaintiff Chad Kester, CDCR #BA1121 shall attend via telephone by dialing (510) 637-3347, and Defendants shall attend in person in Courtroom 6, Second Floor of the United States Courthouse at 1301 Clay Street, Oakland, California.  A copy of this order has been sent via email to the Salinas Valley State Prison Litigation Coordinator.

Rule 65(c) of the Federal Rules of Civil Procedure provides that a district court may grant a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The district court retains discretion "as to the amount of security required, *if any.*" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted) (emphasis in original).  In light of Plaintiff's indigent status, the Court finds it appropriate to waive a bond.  *See Taylor-Failor v. County of Hawaii*, 90 F.Supp.3d 1095, 1103 (D. Haw. 2015) *869 ("Plaintiffs are individuals of limited financial means and there is a significant public interest underlying this action.").

### SCREENING OF PLAINTIFF'S COMPLAINT

Regarding the screening of Plaintiff's complaint, the Court orders as follows.

1.      The Court finds that Plaintiff has stated a cognizable Eighth Amendment claim for deliberate indifference to his safety.

2.      The Clerk shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the complaint with all attachments thereto, and a copy of this order upon defendants **CDCR Secretary Ralph Diaz and CDCR Acting Undersecretary Kathleen Allison** at the **California Department of Corrections and Rehabilitations, 1515 S. Street, Sacramento, CA 95811** and **Acting SVSP Warden Tammy Foss** at **Salinas Valley State Prison** at **31625 Highway 101, Soledad CA 93960**.

A courtesy copy of the complaint with attachments and this order shall also be mailed to the California Attorney General's Office.

3.      In order to expedite the resolution of this case, the Court orders as follows:

United States District Court
Northern District of California

a.      No later than 91 days from the date this Order is filed, Defendants must file and serve a motion for summary judgment or other dispositive motion, or a motion to stay as indicated above.  If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants must so inform the Court prior to the date the motion is due.  A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion.  *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).  A motion to dismiss for failure to exhaust available administrative remedies similarly must be accompanied by a *Wyatt* notice.  *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).

b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants no later than 28 days from the date the motion is filed.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.  Plaintiff also must bear in mind the notice and warning regarding motions to dismiss for non-exhaustion provided later in this order as he prepares his opposition to any motion to dismiss.

c.      Defendants shall file a reply brief no later than 14 days after the date the opposition is filed.  The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion.

4.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents,

as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc) (App. A).

Plaintiff also is advised that a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice.  You must "develop a record" and present it in your opposition in order to dispute any "factual record" presented by Defendants in their motion to dismiss.  *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).

(The *Rand* and *Wyatt* notices above do not excuse Defendants' obligation to serve said notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment.  *Woods*, 684 F.3d at 939).

5.      All communications by plaintiff with the Court must be served on Defendants' counsel by mailing a true copy of the document to Defendants' counsel.  The Court may disregard any document which a party files but fails to send a copy of to his opponent.  Until a defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6.      Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7.      Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8.      Any motion for an extension of time must be filed no later than the deadline sought

to be extended and must be accompanied by a showing of good cause.

9.      Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED.**

Dated: August 23, 2019



JON S. TIGAR
United States District Judge