FILED

NOV 21 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD KESTER | CASE NO. 19-CV-0425-JST |
| PLAINTIFF | |
| V. | MOTION FOR RECONSIDERATION |
| RALPH DIAZ, ET AL | OF PRELIMINARY INJUNCTION |
| DEFENDANTS | |

PERSUANT TO FEDERAL RULE ~~OF~~ OF
CIVIL PROCEDURE 60(b)(2), 60(b)(3)
AND 60(b)(6) THE PLAINTIFF HEREBY
REQUESTS THAT THIS COURT RECONSIDER
HIS REQUEST FOR A PRELIMINARY
INJUNCTION PROHIBITING THE CALIFORNIA
DEPARTMENT OF CORRECTIONS & REHAB-
ILITATION FROM ENJOINING THE
PLAINTIFF WITH GENERAL POPULATION
INMATES, OR PLACING HIM ON
A NDPF YARD.

PERSUANT TO FED. RULE OF PROCEDURE
60(b)(2), ~~the news~~ PLAINTIFF
HAS FOUND NEWLY DISCOVERED EVIDENCE
THAT SHOWS THAT THE DEFENDANTS LIED
OR OMMITED FACTS THAT SHOW
PLAINLY THAT CDCR HAS BEEN

PAGE 1

1  PLANNING AND NOW HAS GIVEN A
2  DATE SHOWING THE YARD THE
3  PLAINTIFF IS CURRENTLY HOUSED
4  WILL CHANGE ON FEBRUARY 1, 2020
5  (SEE DECLARATION OF ERIC KNAPP
6  AND EXHIBIT A-G)

7
8  PERSUANT TO RULE OF PROCEEDURE 60(D)(3)
9  THAT THE DEFENDANTS LIKELY
10  KNOWINGLY PERPETRATED FRAUD
11  WHEN THEY CLAIMED THEY HAD NO
12  KNOWLEDGE OF THE UPCOMING
13  YARD MERGING.

14
15  PERSUANT TO RULE 60 (D)(6) THAT EXPOSING
16  THE PLAINTIFF TO G.P. INMATES WILL
17  LIKELY RESULT IN SERIOUS INJURY
18  OR DEATH & IT SERVES THE PUBLICS
19  BEST INTEREST TO KEEP THE
20  PLAINTIFF SAFE.

21
22  THE PLAINTIFF IS LIKELY TO SUCCEED
23  ON THE MERITS (REDMAN V. CITY of
24  SANDIEGO, 942 F.2d 1435 [9TH CIR. 1991]

25
26  THE PLAINTIFF IS CLEARLY ENTITLED
27  TO SUCH Relief (WINTER V. NAT
28  Res. Def. COUNCIL, INC. 555 US7,22(2008)

PAGE 2

1  THE BALANCE OF HARDSHIPS TIPS
2  SHARPLY IN THE PLAINTIFFS
3  FAVOR SEE Short v. Brown 893
4  F. 3d 671, 675

5

6  THE DEFENDANTS WOULD BE ACTING
7  WITH DELIBRATE INDIFFERANCE TO
8  THE PLAINTIFFS SAFETY BY
9  EXPOSING HIM IN ANY WAY TO
10  THE GENERAL POPULATION. THE
11  SUBJECT APPROACH TO DELIBERATE
12  INDIFFERANCE DOES NOT REQUIRE
13  A PRISONER SEEKING A REMEDY
14  FOR UNSAFE CONDITIONS TO AWAIT
15  A TRAGIC EVENT SUCH AS AN
16  ASSAULT BEFORE OBTAINING RELIEF
17  FARMER V. BRENNAN (1994) 114 S. Ct. 1970

18

19  THE PLAINTIFF is LIKELY to
20  SUFFER IRREPERABLE HARM IN
21  THE ABSENCE OF PRELIMINARY
22  RELIEF DUE TO THE IMPENDING
23  IMERGER OF SNY & GP POPULATIONS
24  & PLAINTIFFS STATUS AS A SEX
25  OFFENDER, KNOWN AS AN INFORMANT,
26  & EX-GANG MEMBER (DROP-OUT)
27  JACKSON V. CITY OF SAN FRANCISCO
28  746. F. 3d 953, 958

PAGE 3

1   THE PLAINTIFF HAS SHOWN A
2   CERTAINT THRESHOLD HAS BEEN MADE
3   ON EACH FACTOR TO GRANT A
4   PRELIMINARY INJUCTION LIEVA-
5   PEREZ V. HOLDER 640 F.3d 962,966

7   WHEREFORE THE PLAINTIFF ~~XXX~~
8   ~~XXXXXX~~ REQUESTS THAT THE
9   COURT PONDER OVER THE NEW
10  EVIDENCE CONSIDER THE ~~XXXX~~
11  LIKELY FRAUD PERPETRATED,
12  AND WIEGH THE MERITS OF
13  MY REQUEST. THE PLAINTIFF
14  PRAYS THE COURT RECONSIDER
15  A PRELIMINARY INTUNCTION
16  FROM ALLOWING C.D.C.R FROM
17  HOUSING, OR OTHERWISE EXPOSING
18  THE PLAINTIFF ~~XXX~~ TO GENERAL
19  POPULATION INMATES.

21  NOVEMBER 12, 2019

23  *[signature]*
24  CHAD KESTER
25  CORRECTIONAL TRAINING FACILITY
26  PO BOX 705
27  SOLEDAD, CA 93960

PAGE 4

FILED

NOV 21 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD KESTER | CASE NO. 19-CV-04205-JST |
| PLAINTIFF | |
| V. | DECLARATION OF CHAD |
| RALPH DIAZ, ET AL | KESTER IN SUPPORT OF |
| DEFENDANTS | PRELIMINARY INJUNCTION |
| | RECONSIDERATION |

I CHAD KESTER, THE PLAINTIFF IN THE ABOVE MENTION CASE DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING STATED IN THIS DECLARATION I BELIEVE TO BE TRUE.

A FEW WEEKS AGO IT WAS ANNOUNCED THAT THE YARD IM CURRENTLY HOUSED ON WILL CHANGE FROM SNY TO NDPF ON OR ABOUT FEBRUARY 1, 2020

MY UNDERSTANDING IS THAT ILL SOON BE TAKEN BEFORE A COMMITTEE TO BE BRIEFED ON THE CHANGE AND NEW EXPECTATIONS, I UNDERSTAND BECAUSE I HAVE ALREADY BEEN DEEMED NDPF ELUGABLE, I WILL HAVE NO CHOICE IN

CK DECLARATION PG 1

1   THE MATTER, AND SINCE THIS IS THE
2   LAST LEVEL II SNY I CANNOT VOLUNT
3   EER TO BE PLACED AT A HIGHER
4   LEVEL III SNY, I WILL BE FORCED TO
5   LIVE WITH G.P. INMATES. (SEE DEFENDANTS
6   EXHIBIT F)
7
8   CDCR, SAYS I WILL BE SAFE ON THESE
9   YARDS, I SAY READ MY EXHIBIT B,
10  PG 6 RICHARD REVELEZ, A 62
11  YEAR OLD SEX OFFENDER WAS
12  BRUTALLY BEATEN AND STABBED
13  BY MEMBERS OF THE G.P. ON
14  A NDPF YARD. HIS ATTACKERS
15  ARE CHARGED WITH ATTEMPTED
16  MURDER. THIS HAPPEND ON LOW
17  SECURITY LEVEL NDPF AND
18  IS ONLY 1 OF HUNDREDS OF SUCH
19  EVENTS.
20
21  THE DEFENDANTS SAY THAT AS SOON
22  AS PEOPLE START ACTING VIOLENT
23  THEY ARE REMOVED FROM THE YARD
24  MOST OF THE GP INMATES SAY
25  DURING THEIR CLASSIFICATION
26  COMMITTEE THEY WILL NOT PROGRAM
27  WITH SNY INMATES. BUT STILL
28  WE HAVE TO WAIT UNTIL

CIL DECLARATION PG 2

1  SOMETHING BRUTAL & TRAGIC LIKE
2  A BEATING AND STABBING HAPPEN
3  BEFORE THEY ACT. IF THAT IS
4  NOT PROOF OF DELIBERATE
5  IN DIFFERENCE TO MY HEALTH,
6  SAFETY, & WELL BEING I DONT
7  KNOW WHAT WOULD BE. I CANT
8  STRESS THIS ENOUGH: And THE SUBJECT
9  APPROACH TO DELIBERATE INDIFFERENCE
10 DOES NOT REQUIRE A PRISONER SEEKING
11 A REMEDY FOR UNSAFE CONDITIONS
12 TO AWAIT A TRAGIC EVENT SUCH
13 AS AN ASSAULT BEFORE OBTAINING
14 RELIEF. (FARMER V. BRENNAN (1994) 114 S.CT 1940

15
16 CDCR, SEEMS SO DILIBERATELY
17 INDIFFERENT TO MY SAFETY THAT
18 THEY ARE WILLING TO PERPATRATE
19 FRAUD IN COURT BY; A. STATING
20 THAT THE HAVE NO KNOWLEDGE OR
21 PLANS TO CHANGE THE YARD IM
22 ON TO NDPF (SEE MY EX, BITS
23 E & F SHOWING TO BATTLE WITH
24 THE INMATE POPULATION AND CDCR
25 TRYING TO STOP THIS CHANGE FOR
26 OVER A YEAR) B. B. STATING
27 I, AS A SEX OFFENDER, A KNOWN
28 LAW ENFORCEMENT INFORMANT, AND

CK DECLARATION PG 3

1  B GANG DROP OUT HAVE NO DANGER
2  OR THREAT TO MY SAFETY ON THESE
3  YARDS.

5  EVEN NOW THE COULD EFFECTIVELY
6  MAKE THIS LEGAL ACTION MOOT
7  BY SAYING IM NO LONGER NDPF
8  ELIGABLE B THAT THEY WILL KEEP
9  ME SAFE FROM THE G.P. YET
10 THEY SIMPLY REFUSE TO ACCEPT
11 RESPONCIBILITY FOR MY SAFETY.

13 I think NOW THAT IVE GOT
14 ABOUT 70 DAYS BEFORE THIS
15 YARD CHANGES THAT IT SERVES
16 THE BEST INTEREST OF THE
17 PUBLIC TO GIVE ME THE PRELIMINARY
18 INJUNCTION AND KEEP ME SAFE
19 FROM THIS IMMENANT THREAT TO
20 MY LIFE.

22 I PRAY THE COURT HELPS ME
23 AND STOPS THIS MADNESS POSTE-
24 HASTE.

26 I THANK THE COURT FOR
27 YOUR TIME IN THIS MATTER

CK DECLARATION PG 4

1

2

3   CHAD KOSTER                                    11/18/19

4   C.T.F.

5   PO BOX 705

6   SOLEDAD , CA 93960

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OK   DECLARATION   PG 5

1  Chad Kester, CDCR No. BA1121
   Correctional Training Facility
2  Post Office Box 705
   Soledad, California 93960-0705
3
   In Pro Per
4

5

6                IN THE UNITED STATES DISTRICT COURT

7             FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10 Chad Kester,                        Case No. 4:19-cv-04205-JST

11      Plaintiff,

                                       DECLARATION OF ERIC KNAPP IN SUPPORT OF
12 v.                                  PLAINTIFF'S CLAIM(S).

13 CDCR Secretary Ralph Diaz, et al.,

14      Defendants.

15 _____/

16

17 I, Eric Knapp, hereby declare as follows:

18      1. I have read everything that has thus far been provided to me by the

19 prisoner(s) who initiated the above-entitled court proceeding.

20      2. I am informed and believe that I am especially qualified to make this

21 declaration in support of the claim(s) of the prisoner(s) in the above-entitled

22 proceeding, particularly because:

23      a. I am a prisoner of the State of California.

24      b. I have been continuously confined within the California Department of

25         Corrections and Rehabilitation (hereafter "CDCR") ever since March 17,

26         1994. (My CDCR identification number is J10618.)

27      c. Throughout the past 25+ years of my incarceration within the CDCR I

28         have both personally prosecuted and legally assisted in many

                     Declaration of Eric Knapp -- Page 1

nonfrivolous legal proceedings concerning a multitude of seemingly
unconstitutional and/or otherwise illegal conditions of confinement
within the CDCR.

d. In 2006 I completed a two-year paralegal course.

e. I am an elected Inmate Advisory Council representative pursuant to and
in accordance with Title 15 of the California Code of Regulations, §
3230, and the CDCR's Department Operations Manual, at Chapter 5,
Article 38.

f. As an elected representative of the Inmate Advisory Council, I have an
ethical, moral, civic, and otherwise expected duty, responsibility, and
right to meaningfully and vigorously advocate for the constitutional,
lawful, and otherwise proper custody, housing, rehabilitation,
training, employment, discipline, and other treatment and care of all
prisoners with whom I am incarcerated. (Id.)

g. Although I have suffered many forms of severe retaliation during the
past 25+ years of my incarceration within the CDCR for lawfully
engaging in such constitutionally protected conduct as is stated above
at Paragraphs 2.c through 2.f, I am nevertheless willing to risk
further such retaliation for hereby and otherwise legally assisting in
and supporting the claim(s) of the prisoner(s) in this action.

h. I have personal knowledge of everything stated in this declaration.

i. I am competent to testify concerning everything stated in this
declaration.

j. I personally possess, have access to, know the content, nature, and
location of, and am willing to provide to the Court a multitude of
evidentiary materials, including CDCR public records and other
documentation, in support of everything stated in this declaration.
(However, I am reluctant to submit all such materials herewith now, for

not only are they quite voluminous but also I want to help protect the
many prisoners who have provided me with supporting declarations and
other corroborating evidence from such retaliation as that which is
stated above at Paragraph 2.g until such time that this Court can
exercise its own power, authority, and discretion to protect those
prisoners from such retaliation itself.)

k. I am willing to undergo polygraph examination if such will help the
Court better credit my statements in this declaration. (I fully
understand that, how, and why courts generally accord convicted
criminals less veracity, credibility, and reliability in these types of
proceedings.)

3. In June 1994, the U.S. Supreme Court held that prison officials violate
the United States Constitution's Eighth Amendment when they house prisoners who
belong to identifiable groups that are commonly singled out for attack by other
prisoners in any environment where they are reasonable likely to be attacked by
such other prisoners as a result of belonging to such identifiable groups. (See,
Farmer v. Brennan (1994) 511 U.S. 825 (further holding that an Eighth Amendment
violation occurs regardless of whether a prisoner actually ever gets attacked,
particularly because neither being violently assaulted while incarcerated nor
being forced to live in constant fear of such assault is part of the penalty
offenders must pay for their crimes against society).)

4. The following identifiable groups of prisoners are commonly beaten,
raped, stabbed, killed, extorted, and otherwise victimized by other prisoners
when housed in general populations:

a. Former judges, prosecutors, police officers, prison guards, etc.;

b. Sex offenders;

c. Inmates whose commitment offenses resulted in loss of life to infants,
the elderly, or other particularly vulnerable victims;

    d. Inmates who have testified or otherwise provided evidence that helped get other inmates arrested, convicted, and punished;

    e. Transgender and other homosexual inmates;

    f. Former gang members who have renounced their gangs and provided information, evidence, and other intelligence against their former gangs' members, leaders, criminal activities, etc.; and

    g. Inmates who have been raped, stabbed, beaten, extorted, and otherwise victimized by other prisoners.

5. I personally belong to two of the identifiable groups of commonly victimized prisoners listed above at Paragraph 4.

6. Prior to approximately January 1997, the CDCR's custom, policy, pattern, and practice was to house the identifiable groups of commonly victimized prisoners that are listed above at Paragraph 4 in general populations with prisoners who were not also of such identifiable groups.

7. Throughout the first more than two years of my incarceration within the CDCR -- i.e., from March 1994 to approximately January 1997 -- I was violently and otherwise traumatically victimized numerous times both by other prisoners and by CDCR prison employees as a result of the CDCR housing me in general populations at two different prisons despite the fact that I belong to two of the identifiable groups of commonly victimized prisoners listed above at Paragraph 4.

8. In approximately January of 1997, the CDCR suddenly began to safely house the identifiable groups of commonly victimized prisoners that are listed above at Paragraph 4, including me, in more protective environments called Sensitive Needs Yards. (Hereafter "SNY"s.)

9. The CDCR suddenly began to safely house the above-listed identifiable groups of commonly victimized prisoners on SNYs, as stated above at Paragraph 8, solely pursuant to and in accordance with Farmer v. Brennan, supra.

10. Since approximately January 1997 to the date of this declaration, the CDCR has safely housed me on multiple SNYs at more than 12 different CDCR prisons solely pursuant to and in accordance with Farmer v. Brennan, supra.

11. I am presently confined at the CDCR's Correctional Training Facility in Soledad. (Hereafter "CTF.")

12. I am presently housed on CTF's North Facility. (Hereafter "CTF-N.")

13. CTF-N is a Level II SNY that houses more than 2,500 prisoners who have all been determined by the CDCR to belong to one or more of the commonly victimized groups listed above at Paragraph 4.

14. CTF-N is a Level II SNY solely pursuant to and in accordance with Farmer v. Brennan, supra.

15. Sometime around December 2017, the CDCR suddenly, unexpectedly, and inexplicably began acting to change the designation and mission of all its Level I and Level II SNYs to Non-Designated Programming Facilities. (Hereafter "NDPF"s.)

16. The CDCR has been acting to change the designation and mission of all its Level I and Level II SNYs to NDPFs since around December 2017, as stated above at Paragraph 15, without having ever complied with any provision(s) of California's Administrative Procedures Act. (Attached hereto as Exhibit A  is a redacted copy of an official CDCR letter wherein CDCR Associate Director Ying Sun admits that, as of less than four months before the date of this declaration, the CDCR's Regulation and Policy Management Branch "does not have a current rulemaking project regarding Non-Designated Program Facilities at this time."

17. As a result of the CDCR acting to change the designation and mission of all its Level I and Level II SNYs to NDPFs since around December 2017, as stated above at Paragraphs 15 and 16:

a. The CDCR has been forcing thousands of Level I and Level II SNY

1    prisoners to be and remain dangerously housed with non-SNY prisoners in

2    general populations (hereafter "GP") on those NDPFs.

3    b. Many SNY prisoners have been violently attacked by non-SNY/GP prisoners

4    on those NDPFs. (Attached hereto as Exhibit B are 8 pages of

5    documentation which show one SNY prisoner in particular, Richard

6    Revelez (CDCR #P96006), was transferred from an SNY to a Level II NDPF

7    and thereupon stabbed multiple times by non-SNY/GP prisoners as a

8    result of belonging to one or more of the identifiable groups of

9    commonly victimized prisoners listed above at Paragraph 4.)

10   c. Numerous violent melees and riots between SNY and non-SNY/GP prisoners

11   have been occurring on those NDPFs. (Public news media has reported on

12   many of those melees and riots.)

13   d. Many SNY prisoners have been seriously and irreparably injured and

14   harmed by non-SNY/GP prisoners on those NDPFs. (See, e.g., as stated

15   and supported above at Paragraph 17.b.)

16   e. Many SNY prisoners are living in constant fear of being violently

17   attacked or otherwise victimized by the non-SNY/GP prisoners with whom

18   they are being dangerously housed on those NDPFs. (Ibid.)

19   f. There has been and continues to be a huge public outcry against the

20   CDCR's forcing of SNY and non-SNY/GP prisoners to be dangerously housed

21   together on those NDPFs. (Attached hereto as Exhibit C are 36

22   pages of documentation which show that, how, and why the public has

23   been and still is calling for an end to such practice.)

24   g. There has been and continues to be much litigation against California

25   officials, employees, and agents for forcing SNY and non-SNY/GP

26   prisoners to be dangerously housed together on those NDPFs. (Attached

27   hereto as Exhibit D are 12 pages of documentation which show a

28   number of courts being heavily inundated with such litigation since

1          the CDCR began such practice around December 2017.)

2      18. Although everything stated above at Paragraph 17 is a matter of

3  voluminous public records, I both can and will provide either a copy of or

4  specific references to all such supporting materials should the Court so desire.

5  (See my explanation above at Paragraph 2.j.)

6      19. CTF-N is the CDCR's last remaining Level II SNY that can safely and

7  otherwise appropriately house a population of around 2,500 prisoners who belong

8  to the commonly victimized groups listed above at Paragraph 4, including because

9  CTF-N is the CDCR's only remaining Level II SNY that can provide celled housing

10 to those Level II SNY prisoners who require single-cell housing, close-custody

11 cell housing, or other cell-only housing.

12     20. Ever since July 12, 2019, numerous CDCR officials, employees, and

13 agents have personally indicated to CTF-N's SNY prisoner population, including

14 me, that California Governor Gavin Newsom has given CDCR Secretary Ralph Diaz

15 permission to very soon begin doing each of the following to CTF-N's Level II

16 SNY prisoner population absent prompt and meaningful judicial intervention and

17 relief:

18         a. Arbitrarily change the already-determined SNY statuses of CTF-N's

19            2,500+ SNY prisoners to non-SNY/GP completely irrespective of the fact

20            they all belong to one or more of the commonly victimized groups listed

21            above at Paragraph 4.

22         b. Transfer hundreds of CTF-N's current 2,500+ SNY prisoner population to

23            different non-SNY NDPFs throughout the State of California **by**

24            **approximately February 2020** and thereupon force them to be dangerously

25            housed with non-SNY/GP prisoners on those NDPFs for the remainder of

26            their sentences.

27         c. Transfer hundreds of non-SNY/GP prisoners to CTF-N **by approximately**

28            **February 2020** and thereupon force them to be dangerously housed with

CTF-N's remaining SNY prisoners who belong to one or more of the commonly victimized groups listed above at Paragraph 4.

d. Impose disciplinary action and other sanctions (e.g., administrative segregation, deprivation of earned liberty, property, and privileges, involuntary transfer, higher-level housing, et al.) against all of CTF-N's 2,500+ SNY prisoners who do not voluntarily waive their known serious safety needs and agree to be dangerously housed with non-SNY/GP prisoners on NDPFs.

21. More specifically regarding what I state above at Paragraph 20:

a. On July 12, 2019, a CDCR/CTF associate warden named D. Chamberlain personally met with and affirmed to CTF-N's Inmate Advisory Council (see above at Paragraphs 2.e and 2.f) everything stated above at Paragraph 20.

b. On August 1, 2019, a CDCR/CTF correctional captain named D. Metcalf personally met with and informed CTF-N's Inmate Advisory Council (hereafter "IAC") that CDCR Secretary Ralph Diaz had just announced to CTF's acting warden, Craig Koenig, that he is going to temporarily postpone but nonetheless eventually proceed with everything stated above at Paragraph 20.

c. On or about August 22, 2019, a CDCR/CTF correctional counselor named R. Monroy Jr. personally met with and affirmed to CTF-N's IAC everything stated above at Paragraphs 20 and 21.b.

d. On or about October 4, 2019, CDCR officials, employees, and agents at CTF -- specifically Chief Deputy Warden K. Hoffman, Associate Warden K. Green, Captain A. Aguilar, Sergeant A. Luna, Visitation Office Assistant V. Polanco, and Procurement Officer E. Gonzales -- personally met with and affirmed to CTF's Inmate Family Council representatives everything stated above at Paragraphs 20 and 21.b.

1

2

e. On October 16, 2019, a spokesman for CDCR Secretary Ralph Diaz named

Ron Self personally met with and told me and scores of other SNY

3

prisoners at an officially sanctioned meeting on CTF-N that everything

4

stated above at Paragraph 20 is scheduled to be **fully implemented** by

5

**February 2020.**

6

f. On October 24, 2019, CTF's acting warden, Craig Koenig, personally met

7

with and affirmed to me everything stated above at Paragraphs 20, 21.b,

8

21.d, and 21.e.

9

g. On October 31, 2019, CTF's acting warden, Craig Koenig, personally met

10

with and affirmed both to CTF-N's IAC and to many other of CTF-N's

11

2,500+ SNY prisoners everything stated above at Paragraphs 20, 21.b,

12

21.d, 21.e, and 21.f.

13

22. Throughout the period of December 2018 to the date of this

14

declaration, hundreds of CTF-N's 2,500+ SNY prisoners have personally expressed

15

to me that and why they fear for their present and future health, safety, and

16

lives -- as well as their earned liberty, property, privileges, etc. -- if they

17

are forced to be dangerously housed with non-SNY/GP prisoners on NDPFs as CDCR

18

officials, employees, and agents have repeatedly announced to us is definitely

19

going to happen in the very near future.

20

23. Ever since December 2018, hundreds of CTF-N's 2,500+ SNY prisoners,

21

including me, have attempted to petition CDCR Secretary Ralph Diaz for

22

protection from the serious and irreparable injuries and harms that we have

23

repeatedly been officially told are definitely coming our way in the very near

24

future. (Attached hereto as Exhibits  E , F , and  G  are copies of just

25

some of the administrative grievances and appeals that have been submitted both

26

by and on behalf of CTF-N's 2,500+ SNY prisoners since December 2018.)

27

24. CDCR officials, employees, and agents have been and still are

28

willfully obstructing the administrative grievances and appeals that are

referred to above at Paragraph 23 for arbitrary and capricious reasons which are nowhere supported or authorized by any existing or otherwise valid regulation(s). (But see my above explanation at Paragraph 2.j as to why I have not provided herewith any documentation that supports this particular averment.)

25. CDCR officials, employees, and agents also have been and still are refusing to address, resolve, or otherwise even acknowledge the wrongful obstruction of the administrative grievances and appeals referred to above at Paragraphs 23 and 24. (Ibid.)

26. In, by, and through causing and allowing our administrative grievances and appeals to be and remain wrongly obstructed as stated above at Paragraphs 23-25, CDCR officials, employees, and agents have repeatedly admitted and confirmed -- including through tacit procuration by not denying -- everything stated above at Paragraphs 20 and 21.

I swear under penalty of perjury under the laws of both the State of California and the United States that all of the foregoing is true and correct. Executed this _10^th_ day of November, 2019, in Monterey County, California.


Eric Knapp, CDCR #J10618
SA-250, C.T.F.

Declarant

Table of Exhibits

Exhibit A:  Letter dated July 26, 2019, from CDCR Regulation and Policy Management Branch Associate Director Ying Sun to CDCR prisoner at the Correctional Training Facility in Soledad. (1 page only.)

Exhibit B:  Documentation showing CDCR prisoner Richard Revelez (CDCR #P96006) was stabbed multiple times by non-SNY/GP prisoners after he was transferred to a Non-Designated Programming Facility, from a Sensitive Needs Yard, despite his known serious safety needs. ( _8_ pages total.)

Exhibit C:  Documentation showing recent public efforts to make the CDCR stop forcing SNY and non-SNY/GP prisoners to be dangerously housed together on Non-Designated Programming Facilities. ( _36_ pages total.)

Exhibit D:  Documentation showing recent litigation seeking to enjoin the CDCR from continuing to force SNY and non-SNY/GP prisoners to be dangerously housed together on Non-Designated Programming Facilities. ( _12_ pages total.)

Exhibit E:  CDCR 602 Emergency Group Appeal dated/submitted December 30, 2018, Log No. CTF-S-19-00150. ( _57_ pages total.)

Exhibit F:  CDCR 602 Emergency Group Appeal dated/submitted July 14, 2019, Log No. CTF-S-19-02433. ( _56_ pages total.)

Exhibit G:  CDCR 602 Emergency Group Appeal dated/submitted October 23, 2019, Log No. CTF-S-19-03527. ( _33_ pages total.)

## CELL-MATE LAW

" The subject approach to DELIBERATE INDIFFERENCE does not require a prisoner seeking
a remedy for UNSAFE CONDITIONS to await a TRAGIC EVENT such as an ASSAULT before
obtaining relief."
Farmer v Brennan (1994) 114 S. Ct. 1940

" The CDC's goal is for inmates to select their own cellmate, so as to maximize
compatibility and reduce the possibility of violence.  There are designated forms
that both inmates must sign indicating that they would like to share a cell
together.  The CDC will usually grant these requests.  Race is not a consideration
in such requests."
Johnson v California (9th Cir. 2003) 321 Fed.3d 791

" Clarification of STAFF RESPONSIBILITIES ... INMATE HOUSING PLACEMENT ...
Would the Inmate's affiliation with any prison gang / disruptive group conflict
with potential partner ?  Would RELIGIOUS BELIEFS conflict with potential cell
partner's beliefs ?  Does the inmate have a previous history of in-cell voilence
or assaults ?  Does the inmate have current or prior victimization concerns ?
Has the inmate expressed fear ?
Memo to all WARDENS D. L. Runnels, Deputy Director CDCR

" In so concluding we in no way condone the current failure of CORRECTIONAL SERGEANTS
to routinely consider prior assaultive behavior in making CELL ASSIGNMENTS and
considering cellmate compatibility.  Indeed, this unfortunate and unexplained
practice leaves those prison officials responsible for celling decisions vunerable
to incurring liability to any individual plaintiff who SUFFERS INJURIES at the
hands of a cellmate with an established history of assaulting cellmates.  Further
with the issuance of this ruling prison administrators will no longer lack actual
knowledge of the problem. "
Madrid v Gomez (N.D. Cal. 1995) 889 Fed. Supp. 1146

" Prison officials are liable for deliberate indifference when they knowingly FAIL
to respond to an inmates requests for help."
Estelle v Gamble (1976) 429 U.S. 97, at 104

" Imagine you commited a crime and are entering the state penitentiary for the first
time as a convicted felon.  You are locked in a cell no bigger than a closet for ten
to fourteen hours each and every day.  In the cell you find a MONSTER IN THE FORM
OF A MAN.  The lights go down.  It's hard to see in.  If you scream, you will
probably will not be heard.  Imagine further that this creature has a well documented
history of taking his recreation by SODOMIZING ANY AVAILABLE PREY.  If the prey
resists, the monster may use a razor to slice the victim from the shoulder down
to the ass.  Imagine also that your KEEPERS, who are by no means EVIL, know they
can save you by glancing at a few bits of paper.  But your keepers have consciously
decided that EFFECIENTLY PACKING THE AVAILABLE CELLS is more important than looking
at the papers that might reasonably provide for your safety.  SPACE IS VALUABLE, and
YOU as a PRISONER ARE NOT. Imagine this scene, or some no less troubling variation,
being repeated over and over again every year.  As you digest the dry discourse
that follows it is useful to keep the MONSTER in mind."
El Tabech v Gunter (1996) 922 Fed. Supp. 244

## CELL-MATE LAW

" The subject approach to DELIBERATE INDIFFERENCE does not require a prisoner seeking
a remedy for UNSAFE CONDITIONS to await a TRAGIC EVENT such as an ASSAULT before
obtaining relief."
Farmer v Brennan (1994) 114 S. Ct. 1940

" The CDC's goal is for inmates to select their own cellmate, so as to maximize
compatibility and reduce the possibility of violence.  There are designated forms
that both inmates must sign indicating that they would like to share a cell
together.  The CDC will usually grant these requests.  Race is not a consideration
in such requests."
Johnson v California (9th Cir. 2003) 321 Fed.3d 791

" Clarification of STAFF RESPONSIBILITIES ... INMATE HOUSING PLACEMENT ...
Would the Inmate's affiliation with any prison gang / disruptive group conflict
with potential partner ?  Would RELIGIOUS BELIEFS conflict with potential cell
partner's beliefs ?  Does the inmate have a previous history of in-cell voilence
or assaults ?  Does the inmate have current or prior victimization concerns ?
Has the inmate expressed fear ?
Memo to all WARDENS D. L. Runnels, Deputy Director CDCR

" In so concluding we in no way condone the current failure of CORRECTIONAL SERGEANTS
to routinely consider prior assaultive behavior in making CELL ASSIGNMENTS and
considering cellmate compatibility.  Indeed, this unfortunate and unexplained
practice leaves those prison officials responsible for celling decisions vunerable
to incurring liability to any individual plaintiff who SUFFERS INJURIES at the
hands of a cellmate with an established history of assaulting cellmates.  Further
with the issuance of this ruling prison administrators will no longer lack actual
knowledge of the problem. "
Madrid v Gomez (N.D. Cal. 1995) 889 Fed. Supp. 1146

" Prison officials are liable for deliberate indifference when they knowingly FAIL
to respond to an inmates requests for help."
Estelle v Gamble (1976) 429 U.S. 97, at 104

" Imagine you commited a crime and are entering the state penitentiary for the first
time as a convicted felon.  You are locked in a cell no bigger than a closet for ten
to fourteen hours each and every day.  In the cell you find a MONSTER IN THE FORM
OF A MAN.  The lights go down.  It's hard to see in.  If you scream, you will
probably will not be heard.  Imagine further that this creature has a well documented
history of taking his recreation by SODOMIZING ANY AVAILABLE PREY.  If the prey
resists, the monster may use a razor to slice the victim from the shoulder down
to the ass.  Imagine also that your KEEPERS, who are by no means EVIL, know they
can save you by glancing at a few bits of paper.  But your keepers have consciously
decided that EFFECIENTLY PACKING THE AVAILABLE CELLS is more important than looking
at the papers that might reasonably provide for your safety.  SPACE IS VALUABLE, and
YOU as a PRISONER ARE NOT. Imagine this scene, or some no less troubling variation,
being repeated over and over again every year.  As you digest the dry discourse
that follows it is useful to keep the MONSTER in mind."
El Tabech v Gunter (1996) 922 Fed. Supp. 244