Stephen J. Akerley (SBN 160757)
sjakerley@mintz.com
Adrian Kwan (SBN 300032)
akwan@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY
  AND POPEO, P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA  94104
Tel:  (415) 432-6000
Fax: (415) 432-6001

Attorneys for Plaintiff Chad Robert Kester


Xavier Becerra
Attorney General of California
DAMON MCCLAIN
Supervising Deputy Attorney General
PREETI K. BAJWA
Deputy Attorney General
State Bar No. 232484
  1515 Clay St., 20th Floor
  Oakland, CA 94612
  Telephone:  (510) 879-0980
  Fax:  (510) 622-2270
  E-mail:  Preeti.Bajwa@doj.ca.gov

*Attorneys Defendants Diaz, Allison, and Foss*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD KESTER,<br><br>            Plaintiff,<br><br>    vs.<br><br>RALPH DIAZ, et al.;<br><br>            Defendants. | **Case No. 19-cv-4205-JST**<br><br>**JOINT CASE MANAGEMENT CONFERENCE REPORT PURSUANT TO FED. R. CIV. P. 26(f) AND CIVIL L.R. 16-9**<br><br>Hearing Date:  January 28, 2020<br>Time:  2:00 p.m.<br>Place:  Courtroom 6, 2nd Floor<br>Assigned Judge:  The Honorable Jon S. Tigar |

In accordance with Fed. R. Civ. P. 26(f), Civil L.R. 16-9 and the Standing Order for All Judges of the Northern District of California on the Contents of Joint Case Management Statements, Plaintiff Chad Robert Kester ("Plaintiff") and Defendants Ralph Diaz, Kathleen Allison, and Tammy Foss ("Defendants"), collectively (the "Parties"), by and through their respective counsel, have met and conferred and hereby submit the following Joint Case Management Statement (the "Joint Statement").

## 1. JURISDICTION AND SERVICE

Plaintiff brings this action seeking declaratory judgment and injunctive relief pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Accordingly, this Court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

Defendants have not yet been served. *See* Dkt. No. 21. Plaintiff's counsel was appointed by the Court on November 25, 2019, and Plaintiff expects to file an amended complaint by February 3, 2020. Plaintiff expects to dismiss Defendant Tammatha Foss, the former warden of Salinas Valley State Prison where Mr. Kester was previously incarcerated, and Defendant Kathleen Alisson, former Undersecretary of Operations for the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff also expects to add Craig Koenig who is the warden of Correctional Training Facility ("CTF") where Mr. Kester is currently incarcerated, Guillermo Viera Rosa, the current Undersecretary of Operations for the CDCR, and Connie Gipson, the Director of the Division of Adult Institutions for the CDCR, as defendants.

## 2. FACTS

### A. Plaintiff's Position

Plaintiff Chad Robert Kester is an inmate at Correctional Training Facility ("CTF") located in Soledad, California. Mr. Kester is a Level II inmate and currently resides in a Sensitive Needs Yard ("SNY") due to his status as, *inter alia*, a sex offender, gang drop-out and informant. Mr. Kester is also being treated for mental illness and suffers from a physical disability as a result of

injuries he sustained during an assault while he was incarcerated at Salinas Valley State Prison ("SVSP").

Since 2017, the California Department of Corrections and Rehabilitation ("CDCR") has been involuntarily merging inmate populations from General Population ("GP") with those from SNY at Non-Designated Programming Facilities ("NDPFs"). To date, all but two Level II SNY have been converted to NDPF with the exception of Correctional Training Facility, where Mr. Kester is currently housed, and California Substance Abuse Treatment Facility and State Prison, Corcoran. Mr. Kester has been endorsed for transfer to a NDPF. Even if Mr. Kester is not transferred, the facility where Mr. Kester is currently housed will be converted into a NDPF sometime in 2020. CDCR efforts at integrating SNY and GP inmates have resulted in documented violent incidents between SNY and GP inmates.

Plaintiff believes the primary factual issues in dispute are whether Mr. Kester's placement in a NDPF will pose a substantial risk of serious harm to his health or safety, and whether Defendants have knowledge of or are otherwise aware of risks to the health and safety of inmates resulting from the integration of SNY and GP inmate populations.

B. <u>Defendants' Position</u>

Over time, Sensitive Needs Yards (SNYs), like the facility where Plaintiff is currently housed, have become more and more violent, and afforded inmates fewer programming opportunities. In response to these and other negative developments within the SNYs, the California Department of Corrections and Rehabilitation (CDCR), after extensive consideration of input from numerous stakeholders, developed the Non-Designated Programming Facility (NDPF) model as an alternative that would incentivize inmates to program in a positive manner and to eschew prison politics, gang activity, and the violence often associated with gangs and prison politics. CDCR's NDPF policy is in line with CDCR's other behavior-based rehabilitative efforts designed and implemented in recent years to prepare individuals for greater personal success and integration in society upon their release from prison.

The NDPF program is designed to create a safer environment where inmates can engage in more programming with other inmates who are equally interested in positive programming and

1 rehabilitation. The program is also designed to keep out inmates who choose to engage in
2 destructive cycles of violence motivated by gangs and prison politics. To date, CDCR has
3 converted all but two of the Level II SNYs, like the facility where Plaintiff is currently housed, to
4 NDPFs.

5       The facts and evidence in this case will demonstrate that Plaintiff was only housed on a SNY
6 because he requested SNY placement when he was committed to CDCR's custody. And the only
7 stated basis for Plaintiff's request was his conviction offense. A review of Plaintiff's case factors
8 indicates that he should be able to safely program in a NDPF. In fact, numerous inmates with case
9 factors similar to Plaintiff's case factors are already successfully programming in NDPFs. And if a
10 specific threat to Plaintiff's safety in a particular NDPF were ever identified, CDCR officials would
11 promptly remove Plaintiff from that situation.

12 **3. LEGAL ISSUES**
13     **a. Plaintiff's Statement**
14     Plaintiff seeks injunctive relief precluding Defendants from placing him in a NDPF. As
15 such, this action presents the following legal issues for the Court's determination, *inter alia*:

16 - The legal standard applicable to Plaintiff's claims for failure to protect under the Eighth
17   Amendment.
18 - The legal standard applicable to Plaintiff's declaratory judgment claim.
19 - Whether Plaintiff is entitled, as a matter of applicable law, to the various forms of relief
20   requested in his Complaint.

21     **b. Defendants' Statement**
22 Defendants deny that Plaintiff is entitled to injunctive relief for the following reasons:
23 1. Under the Eighth Amendment, prison officials have a duty to protect prisoners from
24    violence at the hands of other prisoners, but a constitutional violation occurs only
25    where the deprivation alleged is, objectively, "sufficiently serious," and the official has
26    acted with "deliberate indifference" to inmate health or safety. *Farmer v. Brennan*,
27    511 U.S. 825, 825–26 (1994).
28

2. The implementation of the NDPFs, which was done only after careful consideration and collaboration with internal and external stakeholders, does not constitute deliberate indifference.

3. In light of Plaintiff's case factors, it would not constitute deliberate indifference to his safety if officials were to place him in a NDPF.

**4.    MOTIONS**

    **a.    Pending Motions**

As of the date of this Joint Statement, there is one pending motion before the Court:

- <u>Plaintiff's Motion for Reconsideration</u>.  On November 21, 2019, Plaintiff filed a motion for reconsideration (Dkt. No. 25) regarding the Order Denying Motion for Preliminary Injunction (Dkt. No. 19) prior to the Court's appointment of counsel.  The Parties have met and conferred on the subject matter of the motion, namely the immediacy of the alleged harm to Mr. Kester.  Plaintiff has agreed to withdraw his motion for reconsideration without prejudice to his filing it again at a later date if Defendants would be willing to provide Plaintiff with at least 30 days notice prior to Correctional Training Facility's upcoming conversion into a NDPF.  The Parties are also exploring other alternative interim solutions should Plaintiff's current facility convert to a NDPF during the pendency of this action.

    **b.    Anticipated Motions**

- <u>Plaintiff:</u>  To the extent necessary, Plaintiff intends on filing a motion for leave to renew his application for a temporary restraining order if the Parties cannot find a temporary solution for excluding Mr. Kester's placement into a NDPF during the pendency of this action.
- <u>Defendants</u>:  Defendants intend to file a motion for summary judgment.

The Parties intend on filing a stipulation agreeing to provide Plaintiff with approximately 30 days notice prior to Correctional Training Facility's upcoming conversion into a NDPF.

**5.    AMENDMENT OF PLEADINGS**

As part of the parties' meet and confer, Plaintiff indicated it would be filing an Amended Complaint by February 3, 2020.  Defendants have not yet filed an Answer.

/ / /

**6.     EVIDENCE PRESERVATION**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information (the "ESI Guidelines"), and hereby each confirm that they have designated an attorney member of their respective legal teams (the "ESI Designees"), to meet and confer regarding reasonable and proportionate steps to be taken to preserve evidence relevant to the issues reasonably evident in this action, as outlined by the Guidelines for the Discovery of Electronically Stored Information.

**7.     DISCLOSURES**

The Parties agree to serve Initial Disclosures after Plaintiff has filed his amended complaint and propose extending the deadline to exchange Initial Disclosures until four weeks after the Case Management Conference, on February 26, 2020.

**8.     DISCOVERY**

    **a.     Discovery Propounded to Date**

No discovery requests have been propounded as of the date of this Joint Statement.

    **b.     Scope of Anticipated Discovery**

        i.     Plaintiff's Discovery

Plaintiff will seek documentary, testimonial, and expert discovery from Defendants and certain third parties regarding, among other things: (1) the structure and organization of the CDCR and/or CTF multidisciplinary team overseeing the transition of GP and SNY to NDPF; (2) the practices and procedures utilized by Defendants in evaluating and implementing placement of SNY or GP inmates in NDPFs, including which and how individual case factors are evaluated before determining a GP or SNY inmate is suitable for placement at a NDPF; (3) statistical data from prior conversions of Level I – Level IV facilities converted to NDPF sufficient to show the number of violent incidents occurring between SNY and GP inmates; (4) incidents involving harm or violence between GP and SNY inmates, including the August 14, 2019 riot on Facility C recreation yard at CTF; (5) the policies and procedures which CDCR currently utilize in integrating SNY and GP inmates into NDPFs; (6) the investigation of prior violent incidents resulting in harm or injury to inmates as a result of integrating GP and SNY inmates including the effort to integrate the Fresno

1 Bulldogs with other prison populations at CTF; (7) the policies and procedures which CDCR
2 previously utilized in integrating SNY and GP inmates into NDPFs, and the reasons those policies
3 or procedures were discontinued; (8) the incidents of GP or SNY inmates engaging in violent or
4 threatening behavior toward other inmates in NDPF and the related disciplinary sanctions; (9) the
5 policy rationale behind CDCR's policy to disallow inmates to voluntarily transfer to more
6 restrictive, higher security level non-NDPF facilities; (10) Defendants' public statements and
7 interviews regarding NDPFs; and (11) the inmate population Defendants intend on integrating Mr.
8 Kester into, including that populations case factors, including sexual offender status and gang
9 affiliations.

        ii.        Defendants' Position

Defendants will seek documentary, testimonial, and expert discovery from Plaintiff and certain third parties regarding Plaintiff's assertions that he cannot program in a NDPF.

    **c.**    **Protective Order.**

The Parties agree that a protective order is necessary to safeguard confidential and competitively sensitive information of all Parties, and of non-parties from whom discovery is likely to be sought. Counsel for Plaintiff plans to circulate a proposed protective order to counsel for Defendants prior to the Case Management Conference.

    **d.**    **Proposed Limitations or Modifications to the Discovery Rules**.

The Parties do not propose any modifications or limits to written discovery or depositions at this time. The Parties agree that the limits on written discovery or depositions may be modified by agreement of the Parties or by a showing of good cause to the Court.

    **e.**    **Document Subpoenas to Non-Parties.**

Plaintiff proposes the following with respect to non-parties producing materials in response to subpoenas for production of documents under Fed. R. Civ. P. 45. The issuing party shall request that non-parties simultaneously produce materials to all Parties. If, notwithstanding such request, the non-party does not produce the materials to all Parties, the issuing party shall provide a copy of all materials to the other side within five (5) business days of its receipt of the materials produced by the non-party. If the party serving a subpoena on a non-party under Fed. R. Civ. P. 45 agrees to

modify or extend the time for the non-party to respond to such a subpoena, it shall provide a written explanation for the basis for such extension to the other Parties.

  **f.  Service.**

  The Parties hereby consent to service by electronic mail, and agree to serve any documents not filed via ECF, including pleadings, discovery requests, subpoenas for testimony or documents, expert disclosure, and delivery of all correspondence, whether under seal or otherwise, by email to all attorneys for the receiving party then appearing on the ECF docket, at the email addresses listed thereon.  All pleadings, discovery requests and responses, subpoenas for testimony or documents and responses, and expert disclosure shall be served by email to all attorneys for all parties then appearing on the ECF docket.  In the event the volume of served materials is too large for email and requires electronic data transfer by file transfer protocol or a similar technology, or overnight delivery, the serving party will email the other side's principal designee when the materials are sent to provide notice that the materials are being served.  For purposes of calculating discovery response times under the Federal Rules of Civil Procedure, electronic delivery shall be treated the same as hand delivery.

  **g.  Report on Planned Stipulated E-Discovery Order.**

  The Parties' respective ESI Designees will meet to discuss a Stipulated Electronically-Stored Information (ESI) Order, which the Parties will then propose to the Court.

  **h.  Proposed Discovery Plan**

  The Parties' proposal regarding the timing of discovery is set forth in Exhibit A.

  **i.  Current Discovery Disputes**

  To date, the Parties have not served any discovery and there are no currently pending discovery disputes.

**9.  CLASS ACTIONS**

  This is not a class action.

**10.  RELATED CASES**

  Pursuant to Civil L.R. 3-12, the Parties do not believe that there are related cases.  However, the Parties are aware of the following cases currently pending before another judge in the Northern

District of California regarding Eighth Amendment failure to protect claims, albeit on behalf of General Population inmates.

- *In Re CTF GP Prisoner Litigation,* 5:19-cv-1974-LHK (Northern District)[1]

The Parties are also aware of the following cases, not venued in the Northern District:

- *Montalvo v. Diaz,* 3:19-cv-00363-CAB-JLB (Southern District)
- *Mohemmed v. Diaz, et. al.,* 19CV00393 (Monterey County Superior Court)
- *Joseph v. Diaz, et. al.,* 34-2019-00260159 (Sacramento County Superior Court)
- *Johnston, Jeremiah v. Diaz, et. al.,* 19-cv-000616-ALJ-ALM (Southern District)

**11.     RELIEF**

    **a.     Plaintiff's Requested Relief**

Plaintiff seeks equitable relief in the form of entry of judgment against Defendants declaring, ordering and adjudging at least the following:

- That Defendants violated the Eighth Amendment of the United States Constitution by showing deliberate indifference to a substantial risk of serious harm to Mr. Kester by attempting to house him at a NDPF;
- That Defendants shall be enjoined from further violation of the Eighth Amendment of the United States Constitution;
- That Defendants shall be enjoined from housing Mr. Kester at a NDPF for the rest of Mr. Kester's time spent incarcerated;
- That Defendants shall transfer Mr. Kester to the lowest level SNY facility for the remaining duration of Mr. Kester's incarceration; and
- That Defendants shall restore Mr. Kester's single cell status.

---

[1] This action consolidated cases *Cruz v. Diaz*, Case No. 19-CV-1974-LHK (PR), *Madrigal v. Diaz*, Case No. 19-CV-2130-LHK, and *Villagrana v. Diaz*, Case No. 19-CV-2272-LHK.

Finally, Plaintiff requests that the Court award it expenses, costs, and attorneys' fees under applicable laws including 42 U.S.C. § 1988.

### b.     Defendants' Requested Relief

Defendants' seek relief in the form of entry of judgment against Plaintiff declaring, ordering and adjudging at least the following:

- That Plaintiff take nothing by this action;
- That the Court enters judgment for Defendants;
- That Defendants are awarded costs of suit and attorney's fees; and
- That Defendants are awarded such other relief as this Court deems proper.

## 12.    SETTLEMENT AND ADR

The Parties have just begun exploring settlement options since the appointment of Plaintiff's counsel.

## 13.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The Parties do not consent to proceed before a Magistrate Judge.

## 14.    OTHER REFERENCES

The Parties do not believe this case is suitable for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## 15.    NARROWING OF ISSUES

The Parties do not currently seek any bifurcation of issues.

Should it become apparent that issues before the Court in this action may be narrowed by stipulation or motion, the Parties will consider how best to do so at that time, including with respect to suggestions that may expedite the presentation of evidence at trial.

## 16.    EXPEDITED TRIAL PROCEDURE

The Parties believe this case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64.

## 17.    SCHEDULING

The Parties' proposal regarding the case schedule is set forth in Exhibit A.

**18.   TRIAL**

The Parties believe a jury trial is appropriate in view of the nature of the equitable relief that is sought in the Complaint.

At this point, the Parties estimate that 3 - 5 days are necessary for trial.

**19.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-15, Plaintiff filed its Certificate of Interested Entities or Persons on January 21, 2020 which states Plaintiff has no disclosure to make pursuant to L.R. 3-15(a)(1).  Civil L.R. 3-15 does not apply to governmental entities or agencies.

**20.   PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

/ / /

/ / /

/ / /

21. **SUCH OTHER MATTERS AS MAY FACILITATE THE JUST, SPEEDY, AND INEXPENSIVE DISPOSITION OF THIS MATTER**

The Parties have not identified any other issues to address with the Court at this time.

Dated:  January 21, 2020                     Respectfully submitted,

                                                    MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO PC

By:   */s/ Adrian Kwan*
      Stephen J. Akerley
      Adrian Kwan

*Attorneys for Plaintiff*
*Chad Robert Kester*

Dated:  January 21, 2020                     CALIFORNIA ATTORNEY GENERALS OFFICE

By:   */s/ Preeti Kaur Bajwa*
      Preeti Kaur Bajwa
      Damon Grant McClain

*Attorneys for Defendants Diaz,*
*Allison, and Foss*

# Exhibit A

# Parties' Proposed Discovery Plan and Schedule

| Event | Plaintiff's Position |
|---|---|
| Complaint Filed | July 22, 2019 |
| CMC | January 28, 2020 |
| Amended Complaint | February 3, 2020 |
| Initial Disclosures | February 26, 2020 |
| Close of Fact Discovery | May 28, 2020 |
| Opening Expert Reports | July 2, 2020 |
| Rebuttal Expert Reports | August 14, 2020 |
| Close of Expert Discovery | September 11, 2020 |
| Last Day to File *Daubert* Motions // Parties' Opening Summary Judgment Motion | October 16, 2020 |
| Oppositions to *Daubert* Motions Due // Parties' Opposition Summary Judgment Motion | November 25, 2020 |
| Replies to *Daubert* Motions Due // Parties' Reply Summary Judgment Motion | December 18, 2020 |
| Hearing on Summary Judgment and *Daubert* Motions | February 16, 2021 |
| Pretrial Disclosures | TBD |
| Pretrial Conference | TBD |
| Trial | TBD (approximately three weeks after pretrial conference) |

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3) regarding signatures, I, Adrian Kwan, attest that concurrence in the filing of this document has been obtained from each of the other signatories. I declare under penalty under the laws of the United States of America that the foregoing is true and correct. Executed this 21st day of January 2020, at San Francisco, California.

                                         */s/ Adrian Kwan*
                                         Adrian Kwan